**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HAROLD LITWIN, | ) Case No. |
| Plaintiff, | ) |
| vs. | ) **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| TD AMERITRADE HOLDING CORPORATION, STEPHEN J. BOYLE, LORENZO A. BETTINO, V. ANN HAILEY, JOSEPH H. MOGLIA, WILBUR J. PREZZANO, BRIAN M. LEVITT, KAREN E. MAIDMENT, MARK L. MITCHELL, BHARAT B. MASRANI, IRENE R. MILLER, TODD M. RICKETTS, and ALLAN R. TESSLER, | ) **JURY TRIAL DEMANDED** |
| Defendants. | ) |

Plaintiff Harold Litwin ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE AND SUMMARY OF THE ACTION**

1.   This is an action brought by Plaintiff against TD Ameritrade Holding Corporation ("TD Ameritrade" or the "Company") and the members of TD Ameritrade's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which TD Ameritrade will be acquired by The Charles Schwab Corporation ("Schwab"), through Schwab's wholly owned subsidiary Americano Acquisition Corp. ("Merger Sub") (the "Proposed Transaction").

2.	On November 25, 2019, TD Ameritrade and Schwab issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated November 24, 2019 (the "Merger Agreement") to merge TD Ameritrade with a wholly owned subsidiary of Schwab.  Under the terms of the Merger Agreement, each TD Ameritrade stockholder will receive 1.0837 shares of Schwab common stock for each share of TD Ameritrade common stock they own (the "Merger Consideration").  The Proposed Transaction is valued at approximately $26 billion.

3.	On March 10, 2020, defendants caused to be filed a joint proxy statement/prospectus on Form S-4 (the "Registration Statement") with the SEC.  The Registration Statement, which recommends that TD Ameritrade stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Company and Schwab management's financial projections; (ii) the data and inputs underlying the valuation analyses performed by the financial advisors to the Strategic Development Committee of the Board (the "Strategic Development Committee"), PJT Partners, LP ("PJT Partners") and Piper Sandler & Co. ("Piper Sandler"); and (iii) potential conflicts of interest faced by PJT Partners and Piper Sandler.  Defendants authorized the issuance of the false and misleading Registration Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.	In short, unless remedied, TD Ameritrade's public stockholders will be irreparably harmed because the Registration Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company leases approximately 210,000 square feet of building space in Jersey City, New Jersey and leases two data center facilities in New Jersey; and (ii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of TD Ameritrade.

9. Defendant TD Ameritrade is a Delaware corporation, with its principal executive offices located at 200 South 108th Avenue, Omaha, Nebraska 68154 and a corporate office located at 1 Plaza Four A, Jersey City, New Jersey 07311.  The Company is a leading provider of securities brokerage services and related technology-based financial services to retail clients and independent registered investment advisors ("RIAs").  TD Ameritrade's common stock trades on the Nasdaq Global Select Market under the ticker symbol "AMTD."

10. Defendant Stephen J. Boyle ("Boyle") has been the Company's Interim President and Chief Executive Officer ("CEO") and a director of the Company since 2019.

11. Defendant Lorenzo A. Bettino ("Bettino") has been a director of the Company since 2014.

12. Defendant V. Ann Hailey ("Hailey") has been a director of the Company since 2016.

13. Defendant Joseph H. Moglia ("Moglia") has been Chairman of the Board since October 2008 and a director of the Company since 2006.

14. Defendant Wilbur J. Prezzano ("Prezzano") has been a director of the Company since 2006.

15. Defendant Brian M. Levitt ("Levitt") has been a director of the Company since 2016.

16. Defendant Karen E. Maidment ("Maidment") has been a director of the Company since 2010.

17. Defendant Mark L. Mitchell ("Mitchell") has been a director of the Company since 1996.

18. Defendant Bharat B. Masrani ("Masrani") has been a director of the Company since 2013.

19. Defendant Irene R. Miller ("Miller") has been a director of the Company since 2015.

20. Defendant Todd M. Ricketts ("Ricketts") has been a director of the Company since 2011.

21. Defendant Allan R. Tessler ("Tessler") has been a director of the Company since 2006.

22. Defendants identified in paragraphs 10-21 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

23. Schwab is a savings and loan holding company, headquartered in San Francisco, California. Through its subsidiaries, Schwab engages in wealth management, securities brokerage, banking, asset management, custody, and financial advisory services. As of December 31, 2019, Schwab had $4.04 trillion in client assets, 12.3 million active brokerage accounts, 1.7 million corporate retirement plan participants, and 1.4 million banking accounts. Schwab's common stock trades on the New York Stock Exchange under the ticker symbol "SCHW."

24. Merger Sub is a Delaware corporation and a wholly owned subsidiary of Schwab.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

25. The Company was established as a local investment banking firm in 1971 and began operations as a retail discount securities brokerage firm in 1975. TD Ameritrade provides securities brokerage services and related technology-based financial services to retail clients and independent RIAs. The Company provides its services to individual retail investors and traders and to RIAs predominantly through the internet, a national branch network and relationships with RIAs. TD Ameritrade uses its platform to offer brokerage services to retail investors and traders under a simple, low cost structure and brokerage custodial services to RIAs.

26. On October 21, 2019, TD Ameritrade announced its fiscal year 2019 financial results, including record net new client assets of approximately $93 billion, a 7% increase compared to fiscal year 2018, record average client trades per day of approximately 860,000, a 6%

increase from fiscal year 2018, and record net revenues of $6 billion, a 10% increase from fiscal year 2018. The Company's then-President and CEO, Tim Hockey, commented on the strong financial results, stating:

> Fiscal 2019 was another good year for TD Ameritrade, as we enhanced the investing experience for our clients and delivered strong results across all core metrics. We saw record trading in the fiscal year, averaging 860,000 trades per day, and gathered a record $93 billion in net new client assets, driven by strong asset gathering from both our institutional and retail channels . . . It was a year of significant accomplishment and change as we took full advantage of our scale to deliver on our financial targets, diversify revenue, and further increase our operational efficiency.

Defendant Boyle similarly remarked:

> Despite the volatile year in the market and interest rate variations, our strong full-year results demonstrate the strength of the diversity of our business . . . Integrating greater efficiency and long-term resiliency throughout our business has allowed us to keep expense growth in check, making it easier for us to respond to shifting market and competitive dynamics.

27. On March 9, 2020, TD Ameritrade reported its monthly company metrics for February 2020. The Company averaged 1.871 million client trades per day in the month, a 27% increase from January 2020 and trading was up approximately 21% March to-date, averaging 2.3 million trades per day.

**The Proposed Transaction**

28. On November 25, 2019, TD Ameritrade and Schwab issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> SAN FRANCISCO & OMAHA, Neb.--The Charles Schwab Corporation ("Schwab") and TD Ameritrade Holding Corporation ("TD Ameritrade") today announced that they have entered into a definitive agreement for Schwab to acquire TD Ameritrade in an all-stock transaction valued at approximately $26 billion. Under the agreement, TD Ameritrade stockholders will receive 1.0837 Schwab shares for each TD Ameritrade share, which represents a 17% premium over the 30-day volume weighted average price exchange ratio as of November 20, 2019.
>
> Schwab President and CEO Walt Bettinger said, "We have long respected TD Ameritrade since our early days pioneering the discount brokerage industry, and as a

fellow advocate for investors and independent investment advisors. Together, we share a passion for breaking down barriers for investors and advisors through a combination of low cost, great service and technology. With this transaction, we will capitalize on the unique opportunity to build a firm with the soul of a challenger and the resources of a large financial services institution that will be uniquely positioned to serve the investment, trading and wealth management needs of investors across every phase of their financial journeys."

The combination brings together two leading firms with proud and similar histories of making investing more accessible to all. More than 40 years ago, Schwab and TD Ameritrade started out as alternatives to traditional Wall Street brokerages. They helped lead a revolution to become the preferred model for full-service investing among tens of millions of direct investors and the go-to providers of custodial and consulting services for thousands of independent investment advisors. The firms' mutual respect and complementary cultures will help Schwab successfully integrate TD Ameritrade into its future operations.

With today's announcement, the TD Ameritrade Board of Directors has suspended its previously disclosed CEO search, naming Stephen Boyle, TD Ameritrade EVP and CFO, as the company's interim President and CEO. Mr. Boyle will assume leadership of the company effective immediately, guiding its management team through its fiscal 2020 plan and the proposed integration with Schwab.

"Partnering with Schwab on this transformative opportunity makes the right strategic and financial sense for TD Ameritrade," Mr. Boyle said. "We share a common history—a journey since 1975 that has made Wall Street more accessible and financial dreams more attainable for millions of Americans. Our associates are fiercely proud of that legacy and all that we have accomplished to make TD Ameritrade one of the premier firms in financial services. Now we look to join forces with a respected firm like Schwab that shares our relentless focus, and to do more than we could do apart. Together, we can deliver the ultimate client experience for retail investors and independent registered investment advisors. We can continue to challenge the status quo, pooling our resources and expertise to transform lives—and investing—and deliver sustainable, long-term value to our many stakeholders."

Mr. Bettinger added, "One of Chuck Schwab's ambitions has always been to build a strong and independent Schwab that would be around to serve clients for many years in the future. We believe the combination of our two great companies positions us to be competing and winning in the investment services business for the long run—the very long run."

**The Registration Statement Contains Numerous Material Misstatements or Omissions**

29.     The defendants caused to be filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to TD Ameritrade's stockholders. The

Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

30. Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Company and Schwab management's financial projections; (ii) the data and inputs underlying the valuation analyses performed by the Strategic Development Committee's financial advisors, PJT Partners and Piper Sandler; and (iii) potential conflicts of interest faced by PJT Partners and Piper Sandler.

***Material Omissions Concerning TD Ameritrade's Financial Projections***

31. The Registration Statement omits material information regarding the Company's and Schwab's financial projections provided by TD Ameritrade's and Schwab's management and relied upon by PJT Partners and Piper Sandler for their financial analyses.

32. For example, the Registration Statement sets forth:

In arriving at its opinion, PJT Partners, among other things:

\* \* \*

- reviewed certain internal financial analyses, estimates and forecasts relating to TD Ameritrade, **including projections for fiscal years 2020 through 2023 that were prepared by or at the direction of and approved by the management of TD Ameritrade, which are referred to in this joint proxy statement/prospectus as the TD Ameritrade base projections**, and which were developed into three cases at the direction of, and approved for PJT Partners' use by, the strategic development committee. . .

*Id.* at 119 (emphasis added). The Registration Statement, however, fails to disclose the TD Ameritrade base projections for fiscal years 2020 through 2023.

33. In addition, with respect to each of the Company's Case 1, Case 2 and Case 3 projections, the Registration Statement fails to disclose all line items underlying (i) net revenue; (ii) adjusted net income; (iii) levered free cash flow – TD Ameritrade standalone; and (iv) levered free cash flow – IDA standalone.

34. Similarly, with respect to Schwab management's projections for Schwab, the Registration Statement fails to disclose all line items underlying (i) total revenue; (ii) reported net income; and (iii) net income to common.

35. The omission of this information renders the statements in the "Unaudited Prospective Financial Information" and "Opinions of the Strategic Development Committee's Financial Advisors" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning PJT Partners' and Piper Sandler's Financial Analyses***

36. The Registration Statement describes PJT Partners' and Piper Sandler's fairness opinions and the various valuation analyses performed in support of their opinions. However, the descriptions of PJT Partners' and Piper Sandler's fairness opinions and analyses fail to include key inputs and assumptions underlying these analyses. Without this information, as described below, TD Ameritrade's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on PJT Partners' and Piper Sandler's fairness opinions in determining whether to vote in favor of the Proposed Transaction.

37. With respect to PJT Partners' and Piper Sandler's *Discounted Equity Cash Flow Analysis – TD Ameritrade*, the Registration Statement fails to disclose: (i) the estimated terminal values of the Company; (ii) quantification of the inputs and assumptions underlying the discount rates ranging from 8.5% to 10.5%; and (iii) the fully diluted number of shares of TD Ameritrade

common stock.

38. With respect to PJT Partners' and Piper Sandler's *Discounted Equity Cash Flow/Net Present Value Analysis – Schwab*, the Registration Statement fails to disclose: (i) the estimated terminal values of Schwab; (ii) quantification of the inputs and assumptions underlying the discount rates ranging from 8.5% to 10.5% and 7.92% to 11.92%; and (iii) the fully diluted number of shares of Schwab common stock.

39. With respect to PJT Partners' and Piper Sandler's *Selected Comparable Companies Analysis*, the Registration Statement fails to disclose: (i) the individual multiples and financial metrics observed for each of the selected comparable companies; and (ii) TD Ameritrade's and Schwab's 2020E earnings per share utilized in the analysis.

40. With respect to PJT Partners' and Piper Sandler's price target analyses, the Registration Statement fails to disclose: (i) the price targets observed by PJT Partners and Piper Sandler in the analyses; and (ii) the sources thereof.

41. With respect to PJT Partners' and Piper Sandler's analysis of premiums paid, the Registration Statement fails to disclose: (i) the transactions observed by PJT Partners and Piper Sandler in the analysis; and (ii) the premiums paid in the transactions.

42. The omission of this information renders the statements in the "Opinions of the Strategic Development Committee's Financial Advisors" and "Unaudited Prospective Financial Information" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning PJT Partners' and Piper Sandler's Potential Conflicts of Interest***

43. The Registration Statement fails to disclose material information concerning the conflicts of interest faced by Piper Sandler.

44. The Registration Statement sets forth:

PJT Partners is acting as financial advisor to the strategic development committee in connection with the merger. As compensation for its services in connection with the merger, PJT Partners is entitled to receive from TD Ameritrade (i) $10 million, which became payable upon the delivery of PJT Partners' opinion to the strategic development committee (and which became payable regardless of the conclusion reached in such opinion) and (ii) **additional compensation upon the closing of the merger, the amount of which will be determined using a formula incorporating the exchange ratio and the trading price of Schwab common stock during a certain time period prior to closing of the merger.** As of February 21, 2020, this closing-related fee would have been approximately $41.9 million.

*Id.* at 121-122 (emphasis added). The Registration Statement, however, fails to disclose the details of the formula that will determine that amount of additional compensation PJT Partners will be entitled to receive upon the close of the Proposed Transaction.

45. Similarly, the Registration Statement sets forth:

Piper Sandler is acting as the strategic development committee's financial advisor in connection with the merger and will receive a fee for such services, $5 million of which was paid by TD Ameritrade to Piper Sandler upon the signing of the merger agreement and the remainder of which is payable and contingent upon the closing of the merger. **The portion of the fee payable and contingent upon the closing of the merger will be determined using a formula incorporating the exchange ratio and the trading price of Schwab common stock during a certain time period prior to closing of the merger.** As of February 21, 2020, this fee would have been approximately $14.0 million. Piper Sandler also received a $5 million fee from the strategic development committee upon rendering its opinion (and which became payable regardless of the conclusion reached in such opinion).

*Id.* at 125 (emphasis added). The Registration Statement, however, fails to disclose the details of the formula that will determine the amount of Piper Sandler's fee that will be payable and contingent upon the close of the Proposed Transaction.

46. Additionally, the Registration Statement sets forth that:

[i]n the ordinary course of PJT Partners and its affiliates' businesses, PJT Partners and its affiliates may provide investment banking and other financial services to TD Ameritrade, Schwab, TD Bank or their respective affiliates and may receive

> compensation for the rendering of these services. During the two-year period prior to the date of its opinion, PJT Partners did not receive any fees from TD Ameritrade, Schwab, TD Bank or any of their respective affiliates.

*Id*. at 122. The Registration Statement, however, fails to disclose whether during the two-year period prior to the date of its opinion, PJT Partners performed any services for TD Ameritrade, Schwab, TD Bank or any of their respective affiliates and if so, the specific services it performed.

47. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

48. The omission of this material information renders the statements in the "Opinions of the Strategic Development Committee's Financial Advisors" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

49. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other TD Ameritrade stockholders will be unable to make an informed voting decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

50. Plaintiff repeats all previous allegations as if set forth in full.

51. During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary to make

the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

52. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement. The Registration Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about Company and Schwab management's financial projections, the data and inputs underlying the valuation analyses performed by the Strategic Development Committee's financial advisors, PJT Partners and Piper Sandler, and potential conflicts of interest faced by PJT Partners and Piper Sandler. The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

53. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

54. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

55. Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for Violations of
Section 20(a) of the Exchange Act**

56. Plaintiff repeats all previous allegations as if set forth in full.

57. The Individual Defendants acted as controlling persons of TD Ameritrade within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of TD Ameritrade, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

58. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

59. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Registration Statement.

60. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

61. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

62. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, TD Ameritrade's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of TD Ameritrade, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to TD Ameritrade stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 2, 2020

**WEISSLAW LLP**

By  *s/ Mark. D. Smilow*
Mark. D. Smilow
Richard A. Acocelli (to be admitted *pro hac vice*)
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: msmilow@weisslawllp.com

*Attorneys for Plaintiff*